IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD SHINGLER, | ) | CASE NO. 1:14 CV 725 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| SMILE CARE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |

This case is before the Court on Defendants, Smile Care, LLC, and Elliott Schlang, DDS's ("Smile Care" or Defendants) Motion for Summary Judgment. (ECF # 29). Plaintiff, Donald Shingler filed an Opposition, and Defendants filed a Reply in support of their motion. (ECF # 33, 34). The issues have been fully briefed and are now ready for disposition. For the reasons set forth below, Defendants' motion is GRANTED.

**Procedural and Factual Background[1]**

[1] The factual summary is based upon the parties' statements of facts. Those material facts

Smile Care is a mobile dentistry practice that provides dental services to children at schools and at military bases. (Schlang Depo. at 17). Dr. Schlang is the Dental Director of Smile Care. (Schlang Tr. at 20). Plaintiff, Dr. Donald Shingler, DDS, graduated from the Case Western Reserve University School of Dental Medicine in 1992 with a Doctorate in Dental Surgery. Dr. Shingler entered into a Dentist Independent Contractor Agreement with Smile Care, agreeing to work at schools providing services to children. The agreement was effective January 22, 2013, but he did not begin providing services through Smile Care until September of 2013, when he was fifty-three years old. (Shingler Depo. at 17, 66). Dr. Shingler's relationship with Smile Care was terminated approximately a month after it began in October of 2013. (Shingler Depo. at 24).[2]

During the approximately one month period when he was providing patient services through Smile Care, at least two dental hygienists he worked with complained, in writing, about his behavior toward patients. On September 22, 2013, one of the hygienists who worked with Dr. Shingler notified Dr. Schlang that "due to an overwhelming amount of moral and ethical concerns" she would no longer agree to work with Dr. Shingler. Generally the complaint alleged that Dr. Shingler was jeopardizing the company's name, improperly using equipment, improperly applying local

---

which are controverted , with both sides supported by deposition testimony, affidavit, or other evidence, are stated in a light most favorable to Plaintiff, the non-moving party.

2

Dr. Shingler was placed at Smile Care through a placement agency called Staff Care. (Shingler Depo. at 20-21). Staff Care is a Delaware corporation with its principal place of business in California, but with corporate offices in Dallas County, Texas. Staff Care was originally named in Dr. Shingler's Complaint as part of this litigation. However the Court transferred that portion of the case to the United States District Court for the Northern District of Texas, Dallas Division, based on a "Governing Law" provision in the Provider Services Agreement that governed the relationship between Dr. Shingler and Staff Care. (ECF # 22).

anesthetic, diagnosing without reviewing x-rays, extracting teeth rather than fixing them, failing to communicate in a professional manner, was unsympathetic to the child patients, and may have violated HIPPA. (Schlang Depo. at 139-140, Ex. 2).

Dr. Schlang visited the work site on September 30, 2013 and tried to iron out some of the communication issues and other problems between Dr. Shingler and the hygienists. (Schlang Depo. at 58, Ex. 3). However, within a week after his visit, yet another hygienist lodged a written complaint against Dr. Shingler and refused to work with him. This hygienist alleged that Dr. Shingler took a picture of a young female patient, who was wearing a short skirt, while she was lying on the exam table. The picture allegedly was taken from the foot of the table looking upward. She also alleged that Dr. Shingler referred to the exam table as the "spanking table" and told little children that he "liked to eat little kids because they tasted so yummy." (Schlang Depo. Ex. 4). She further complained that he was rough with the kids, pulled at their clothes to move them, yelled at them, and never offered any comfort to children who were scared or in pain. She also alleged that his patients could be heard screaming. (Schlang Depo. Ex. 4). Dr. Shingler testified that he believed that the written complaints from these two hygienists were the reason Smile Care decided to terminate their relationship with him. (Shingler Depo. at 140-142). There were two other hygienists who also complained about Dr. Shingler, although apparently not in writing, and no specifics of these complaints were referenced in the parties' briefing. (Schlang Depo. Ex. 4).

Dr. Shingler testified that he had his own complaints about the hygienists he worked with. He alleges that he made complaints to Dr. Schlang, once by telephone and once in person when Dr. Schlang came to work with the group on September 30, 2013. (Shingler Depo. at 130-131). In addition he testified that he complained once by phone to Dr. Woll, another dentist associated with

Smile Care. He did not ever reduce his complaint to writing. (Shingler Depo. at 115, 117-118). He testified that although he thought the hygienists were violating the law he could not identify any law that was broken, was not familiar with any Ohio statutes or regulations governing the supervision of dental hygienists, did not know if they violated any criminal laws, and did not believe that the hygienists actions violated OSHA as alleged in the Complaint. He never consulted with an attorney to determine whether the hygienists behavior violated any laws. He also testified that he never witnessed a hygienist performing treatment without supervision, other than taking x-rays that he had not authorized. (Shingler Depo. at 121-122, 125-126, 130-132, 135-136). He did allege that hygienists would dismiss patients without his authorization, and that based on their observations while performing patient cleanings, the hygienists sometimes disagreed with his diagnoses. (Shingler Depo. at 123, 130-133).

Dr. Shingler did not provide any evidence that he ever complained that any hygienist had violated a specific law or regulation. He did testify that the main reason he was upset with his termination was that Dr. Schlang and Dr. Woll believed the hygienists who complained about him instead of believing him, a fellow dentist. (Shingler Depo. at 141-142).

## **Standard of Review**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions

> of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56©). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't*

*of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **Analysis**

Dr. Shingler's Complaint raises five claims for relief: (1) Wrongful Termination in violation of R.C. § 4113.52 (Whistleblower's Statute); (2) Wrongful Termination in violation of public policy; (3) Age Discrimination; (4) Wrongful Termination based on Age Discrimination; and, (5) Intentional Infliction of Emotional Distress. Defendants' motion for summary judgment seeks dismissal of all five claims. Dr. Shingler's brief in opposition to the motion for summary judgment does not contest or otherwise address Defendants' request for dismissal of Count 1 (violation of the Whistleblower's Statute), or Counts 3 and 4 (age discrimination claims).

Defendants presented sufficient uncontested evidence to show that Dr. Shingler did not satisfy the requirements for protection under the Whistleblower's Statute. Dr. Shingler, himself, testified that he never complained about the hygienists in writing as required under the statute.

There is also no evidence that he ever identified any law or safety standard that he believed had been violated by the hygienists' allegedly improper actions when he made oral complaints about their behavior. Further, he testified that even now he does not know if the hygienists alleged behavior could be considered a criminal act, and he did not believe that they had violated any provision of the Occupational Safety and Health Act, which governs safety issues in the workplace. Plaintiff does not present any argument, either legal or factual, to challenge the dismissal of the Whistleblower's claim in Count One. Therefore, summary judgment in Defendants favor is warranted on this count.

Defendants have also presented uncontested evidence showing that Dr. Shingler cannot establish the necessary criteria for an age discrimination claim. His age discrimination claim is based solely on the premise that the management of Smile Care put more stock in the opinions of the dental hygienists who complained about him, and who happened to be younger than he, than they did in Dr. Shingler's own opinions and judgments. (Shingler Depo. at 64-66). He admits that the younger hygienists he compares himself to did not have the same job or the same responsibilities as he had. He had no idea who replaced him in his role as dentist, or how old the replacement was. (Shingler Depo. at 66-68). The evidence shows that, in fact, Dr. Shingler was replaced by a dentist who actually older than he was. He could cite to no evidence that his age was a factor in his termination.[3] Again, Plaintiff did not attempt to contest, on either a legal or

3 Dr. Shingler's claims the written complaints the hygienists submitted against him contain evidence of age discrimination. Within these written complaints he admits that there is no direct reference to his age but points to criticisms such as, "took inappropriate photographs," "didn't use enough water," "didn't know how to use the equipment," and that he called the exam table the "spanking table" as implicit evidence that he was discriminated against on the basis of his age. (Shingler Depo. at 76-96). The Court finds that there is no reasonable nexus between the cited comments and a bias against older

factual basis, the request for dismissal of his age discrimination claims, in his opposition to the Defendants' motion for summary judgment. For these reasons, Counts Three and Four of Plaintiff's Complaint are also dismissed. The two contested claims for wrongful termination in violation of public policy, and for intentional infliction of emotional distress will be addressed in more detail below.

A. Wrongful Termination in Violation of Public Policy

Plaintiff has based his wrongful termination in violation of public policy claim that it was against public policy to permit his termination after he reported improper behavior by Smile Care's dental hygienists.[4] These are the same allegations that formed the basis for his claim under the Whistleblower's Statute. The Sixth Circuit and the Ohio Supreme Court have both held that under Ohio law, a plaintiff cannot state a claim for wrongful discharge in violation of public policy unless he or she is able to establish a violation of the underlying source of that policy. *Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559 (6th Cir. 2003); *Kulch v. Structural Fibers,*

---

dentists in general.

[4] Both sides confuse this issue at points during the briefing. At times the arguments relating to the clarity of the public policy at issue are directed at the existence or non-existence of a rule or law that prohibits hygienists from treating patients without supervision. No one argues, however, that Dr. Shingler was terminated because the hygienists treated patients without supervision, nor has he actually alleged that he was terminated because he directed them to perform in accordance with a specific law or regulation. Rather, it is clear from his own testimony and all of the other evidence provided that Dr. Shingler's claim is that he was terminated because he reported an alleged unspecified violation of law by the hygienists. The alleged cause of his termination was his reporting of a problem, not the problem itself. Therefore, the public policy at issue is the Whistleblower's statute and not any rule or law regulating the scope of authority given to hygienists.

*Inc.* (1997), 78 Ohio St.3d 134, 677 N.E. 2d 308. "When the employee's discharge is not actionable under the law that establishes the 'clear public policy,' the companion common-law claim for relief likewise fails as a matter of law." *Yuhasz.* at 568-69 (citations omitted).

The Ohio Supreme Court has stated that a claim for discharge in violation of public policy can be based on public policies that are articulated in a state or federal constitution, statute, administrative regulation or in the common law. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E. 2d 51. Prior to the enactment of the Whistleblower's Statute, there was no common law cause of action for (or other officially stated policy against) retaliatory discharge. *Phung v. Waste Mgt., Inc*., (1986), 23 Ohio St.3d 100, 491 N.E.2d 1114. The creation of the Whistleblower's Statute created a new cause of action and articulated a newly accepted public policy against retaliation for the reporting of criminal or otherwise dangerous activities in the workplace. Therefore, in order to state a claim for wrongful discharge in violation of public policy for allegedly reporting improper behavior by other Smile Care employees, Dr. Shingler would have to establish a violation of the Whistleblower's Statute.[5] "If appellant was entitled to maintain a [termination in violation of public policy claim]. . . then that claim would have to be based upon the public policy embodied in R.C. 4113.52. Since appellant did not comply with

---

5 Defendant argues that Dr. Shingler is not protected under the common law prohibition against wrongful termination in violation of public policy because he is an independent contractor and not an employee. However, this is not a clear bar to recovery where the public policy at issue is the violation of the Whistleblower's Statute. That statute provides a definition of "employee" specific to that statute, that appears to be broader than the definition in other areas of the common law or statutory employment law. Because this claim fails for other reasons we need not decide today, however, whether Dr. Shingler can be classified as an independent contractor under general employment law, nor whether that would necessarily preclude him from meeting the specific definition of an "employee" as defined by R.C. §4113.51 for purposes of this claim.

the statute in the first instance he would have no foundation for a [public policy] claim. . . ." *Contreras v. Ferro Corp*. (1995), 73 Ohio St.3d 244, 251, 652 N.E. 2d 940, 946.[6]

As set forth above, Dr. Shingler has failed to provide any evidence or argument that he satisfied the requirements for bringing a claim under the Whistleblower's Statute. Because he has not been able to establish any violation of the underlying statute or other sources of policy upon which he has based his public policy claim, he may not recover under the public policy common law claim. *Contrearas,* 73 Ohio St. 3d 244; *Kulch*, 78 Ohio St. 3d 134, *Yuhasz*, 341 F.3d 559, *Davidson v. PB America, Inc.* 125 Oho App. 3d 643, 650 709 N.E.2d 510, 514-515 (Ohio App. 1997)*Hady v. Hunt-Wesson, Inc*., 63 F.Supp. 2d, 830, 832-833 (N.D. Ohio 1999). Summary judgment is, therefore, granted on Dr. Shingler's public policy claim.

B. <u>Intentional Infliction of Emotional Distress</u>

A claim for intentional infliction of emotional distress must involve a "serious" emotional injury. Under Ohio law, a serious emotional injury is defined as one "where a reasonable person normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks* (1983), 6 Ohio St. 3d

---

6

Originally many courts found that R.C. §4113.52 preempted any common law remedies for wrongful termination against public policy. However, the Supreme Court of Ohio found that there was no preemptive intent articulated in the statute. *Kulch*, 78 Ohio St. 3d 134. At the same time the Court also made clear that this did not mean that a cause of action under the common law could be established without proving a violation of statutory policy it was based on. Rather, the common law public policy claim offers a remedy where they may not be a personal remedy included in the statute or regulation establishing the policy, and otherwise provides litigants their choice between available statutory or common law remedies, by allowing the claim to be brought either under the statutory provisions or under the common law.

72, 451 N.E. 2d 759. A court may determine whether an alleged emotional injury is "serious" as a matter of law. *Id.* There is no evidence in the record that would indicated that Dr. Shingler's alleged emotional distress resulting from his termination from Smile Care was "serious" as defined above.

Defendant has cited Dr. Shingler's testimony to show that the only distress he claims to have suffered was the predictable disappointment or temporary depression that may be expected to occur when a person faces termination. They also cite Dr. Shingler's testimony that his resulting depression was not severe enough to cause him to seek treatment or take medication. (Shingler Depo. at 22,-27). Plaintiff, himself, points to absolutely no evidence that would establish any distress whatsoever in his brief in opposition to the motion for summary judgment.

FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.* The Court finds, therefore, that there is no evidence of "serious" emotional distress as a matter of law, and that summary judgment is warranted on this issue.

## Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED in its entirety. (ECF # 29). Pursuant to Fed. R. Civ. Pro. 56, Plaintiffs First Amended Complaint is

hereby dismissed with prejudice. IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: June 25, 2015